**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case Nos. 97-381C & 97-38124C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF SCENIC VALLEY'S MOTION TO SUPPLEMENT RECORD**

## INTRODUCTION

Plaintiff Scenic Valley Associates ("Scenic Valley") (plaintiff no. 26), filed a motion to supplement the record (hereinafter "Pl. Mot.") in response to this Court's order disallowing damages for Scenic Valley, finding insufficient proof of the partnership's financial ability to prepay its FmHA mortgage. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 718 (Aug. 30, 2004) ("Order" or "Slip Op.) Defendant United States raises for the first time in its response the argument that Plaintiff did not demonstrate an ability to prepay. *See* Defendant's Opposition To Plaintiff Scenic Valley Associates' Motion To Supplement Record (hereinafter "Def. Brief").

Scenic Valley presented evidence at trial, in the form of testimony from a partner, contemporaneous documents, and expert testimony, which directly supports the conclusion that Scenic Valley was able and planned to prepay its FmHA mortgage. The government has never sought dismissal of Scenic Valley's claims on the ground that the partnership lacked the ability to prepay its FmHA mortgage – and in fact never challenged the evidence that Plaintiff would

have prepaid its mortgage if permitted to do so – until the Order from this Court was published. Permitting supplemental evidence is entirely within this Court's discretion, and using that discretion is warranted in order to confirm whether Plaintiff could in fact have prepaid its mortgage if allowed by the government.

Plaintiff Scenic Valley respectfully requests leave to supplement the record in order to admit information regarding its financial ability to prepay the FmHA mortgage; or, in the alternative, the Court should conclude that the evidence presented at trial was sufficient to determine that Plaintiff had the ability to prepay its mortgage and thus suffered damages as a result of the government's breach of contract.

## ARGUMENT

### A. Unchallenged Affirmative Evidence Of Intent And Ability To Prepay Was Presented At Trial.

Scenic Valley presented affirmative testimonial evidence of Plaintiff's intent and ability to prepay at trial, a fact which garners zero attention in Defendant's Brief. At trial, Mr. George Vitalis (now deceased) testified that the partnership had wanted for many years to prepay its mortgage and exit the program. (IV/1003, 1007, 1009-10) Another partner, Mr. Linn Slattengren, submitted a written request to prepay the FmHA mortgage sometime between late 1994 and early 1995. (IV/1008-09); (Maki Decl. ¶ 6); (PX 47) Mr. Vitalis further testified that the Scenic Valley property had sufficient equity for the partnership to obtain a conventional mortgage loan. Indeed, enough equity existed in the property such that, after paying off the government mortgage loan, the partnership could have borrowed an additional 70% on equity with which to work. (IV/1011) Finally, the partnership introduced written evidence indicating that, as of 1994, the total market value of the property likely was approximately $600,000, well

above the then current mortgage loan amount of about $360,000. (PX 47 at 1, 3) None of this evidence was challenged by the government at all during trial or in post-trial briefing.

In addition, the expert testimony presented at trial further demonstrates that Scenic Valley's ability to prepay the mortgage was more likely than not since prepayment was essential to a successful business plan. Dr. Karvel established that none of the Plaintiffs would be able even to recoup their initial investment in the properties absent the ability to prepay their FmHA mortgage. (I/352); (*See also* VII/1559) ("With the owners that I've met, and I believe that I've met with all of them for each of the 37 subject properties, the only thing I've heard consistently from them is that they want to prepay."). In short, Dr. Karvel's economic analysis revealed that "[the property is] worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property." (II/494) None of this evidence was challenged by the government at all during trial or in post-trial briefing.[1]

Since Scenic Valley's assertions and documents regarding its ability to prepay the mortgage were not challenged, there was little reason to delay proceedings to belabor the point. Without a challenge to the presented evidence, either explicitly or implicitly, the presentation of further evidence would have been duplicative and was not warranted. Indeed, Federal Rule of Evidence 403 expressly permits the exclusion of relevant evidence if its probative value is substantially outweighed by "…considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Where the sufficiency of certain proof is ultimately questioned, however, additional relevant evidence *cannot* be excluded by Rule 403. Here, Scenic Valley was not put on notice that the sufficiency of its proffered evidence would be challenged until the Court acted on its own initiative prior to final judgment. Under the

[1] In fact, the government first asserts that Scenic Valley has not proved its capacity to prepay the mortgage in response to Plaintiff Scenic Valley's Motion To Supplement The Record.

circumstances, and given that the partnership's trial evidence of its ability to prepay was undisputed by the government, Plaintiff submits that it would be fair and proper for the Court to consider additional, clarifying evidence by giving the Plaintiff the opportunity to respond.[2]

**B. This Case Presents Similar Facts As *Gibson*.**

The Third Circuit has ruled that a court may reopen the record and admit new evidence in circumstances that greatly mirrors Plaintiff's situation. *Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003). In *Gibson*, the trial record was closed. *Id*. The evidence that was admitted was consistent, alternative proof of evidence addressed at trial. Similarly, a final judgment also was not entered before the court permitted additional evidence to be admitted. Perhaps most significantly, the issue at point was not disputed until after the record was closed.[3] The Third Circuit held the trial court did not abuse its discretion by admitting the evidence. This holding is consistent with common judicial practice of allowing a party to

---

[2] For example, when a court grants summary judgment *sua sponte*, notice is typically given to the party adversely affected so that a response may be offered. *Armour v. County of Beaver*, 271 F.3d 417, 434 (3rd Cir. 2001); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir. 1994) (holding that district court's failure to give sufficient notice that it might grant summary judgment precluded summary judgment for breach of contract claim); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) (finding reversible error in trial court's grant of summary judgment sua sponte without proper notice). Similarly, *sua sponte* dismissal for failure to state a claim also requires notice and an opportunity to respond. *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998). For the same reasons, when a court uses its inherent power to issue sanctions *sua sponte*, the court should provide notice and afford the party time to respond. *See Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Moates v. Barkley*, 147 F.3d 207 (2nd Cir. 1998) (per curiam); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996).

[3] In *Gibson*, a police officer claiming wrongful termination in a § 1983 suit challenged his ability to hear the underlying conversation during closing arguments. *Gibson*, 355 F.3d at 219. The argument consisted of an assertion that the audio (as presented by a video tape showing the audio tapes being played at a disciplinary hearing) was of such poor quality that actual collusion with job deception was not possible. *Id*. The terminated officer challenged the admission of the evidence, arguing that the court was permitting the adverse party to circumvent the arguments based on the record as presented. *Id*. The Third Circuit was not persuaded by this argument. *Id*.

respond to an opponent's arguments in order to reach a fair decision based on all the relevant evidence.

In this case, the trial record is closed, but a final judgment has not been entered. The issue in dispute, Scenic Valley's ability to prepay the FmHA mortgage, was not disputed until after each side had rested its case. The evidence Plaintiff seeks to admit is entirely consistent with the evidence and arguments presented at trial. Contrary to Defendant's Brief, the supplemental evidence provides a clearer and more detailed picture of Scenic Valley's ability to prepay the FmHA mortgage. (*See* Def. Brief at 4) ("Scenic Valley does not seek to offer the trier of fact a clearer version of evidence already in the record"). The record supports the Plaintiff's trial testimony, and provides more detail about the several options the partnership could have pursued if permitted by law to prepay without restrictions. Defendant's differentiation of *Gibson* relies on the faulty premise that no evidence has been produced on the issue of Scenic Valley's ability to prepay the FmHA mortgage. Considering the aforementioned trial testimony of Mr. Vitalis, as a partner of Plaintiff Scenic Valley, the expert testimony regarding prepayment as an economic necessity, and the contemporaneous documents indicating that the partnership sought action on a prepayment application, Defendant's attempt to distinguish *Gibson* fails.

The fact is that the profound gap in the evidence regarding the partnership's desire and ability to prepay lies on the government's side. Although the burden of persuasion rests with the Plaintiff on any given issue, at some point the Defendant's failure to produce evidence on its own behalf, or failure even to challenge the assertion, becomes noteworthy.[4] This fact takes on

[4] *See, e.g., Sabatino v. Curtiss Nat'l Bank of Miami Springs*, 446 F.2d 1046, 1055 (5th Cir. 1971) (although the burden of proof never shifts, when a party having the burden of proof makes a prima facie case, the opposing party is required to "come forward with some evidence to rebut that prima facie case"); *Willingham v. Secretary of Health, Ed. & Welfare*, 377 F. Supp. 1254, 1257 (S.D. Fla. 1974) ("It is said that although a plaintiff always has the burden of persuasion,

added importance when the government first raised the argument not at trial, or even in Defendant's post-trial briefs, but in response to Plaintiff's Motion to Supplement.

**C. The Motion To Supplement Record Is Solidly Within This Court's Discretion And Should Be Granted.**

The case law is clear that a trial court has the discretion to admit supplemental evidence. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). As with most uses of a court's discretion, equitable concerns dominate the analysis. *See e.g., Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003); *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998) ("Ultimately, 'fairness is the key criterion in determining whether to reopen.'") (citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1160 (1st Cir. 1996)).[5] When considering equitable issues, an exploration of the factual context and history becomes necessary as legal standards are applied.

**1. Defendant Cites Nothing That Contradicts The Standard Of Fundamental Fairness.**

The only Federal Circuit case cited by Defendant stands for the proposition that a trial court does not abuse its discretion in denying a motion to reopen the record and admit new evidence when the new evidence allegedly contradicts the adversary's evidence, no explanation is offered for not producing it earlier, and the issue in question is essentially moot. *Enzo*

---

which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or must lead to such a ruling.").

[5] Defendant minimizes the equitable concerns and focuses on one possible factor a court may consider in deciding whether to reopen and submit additional evidence, specifically the reason for not producing the evidence earlier. Contrary to Defendant's Brief (at p.2), Plaintiff Scenic Valley's motion is dedicated to discussing why the documents were not produced and why this Court should admit the supplemental evidence. (*See* Pl. Mot.) In sum, the documents were not in the possession of the Plaintiff Scenic Valley, nor in the possession of the individual partners of Scenic Valley. The partnership exercised due diligence in attempting to obtain the documents from the bank before the trial, but through no fault of the partners or the bank, they could not be located until only recently.

*Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362 (Fed. Cir. 1999). The government also cites cases from other circuits which merely stand for the unremarkable proposition that a court has discretion to deny reopening cases, particularly where the initial failure to introduce evidence was strictly for tactical purposes.[6]

Aside from the affirmation of this Court's discretionary powers, the government has failed to accurately state the applicable legal standard for considering a motion to reopen by confusing a Rule 60 motion with a motion made under Rule 59(e), and implying that the more stringent standards of Rule 60 apply to the present case. RCFC 59(e); RCFC 60.[7] "A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements." *Lavespere v. Niagra Mach. & Tool works, Inc.*, 910 F.2d 167, 173-174 (5th Cir. 1990), *reh'g denied*, 920 F.2d 259 (1990), *cert denied*, 510 U.S. 859 (1993). In *Lavespere*, the

[6] (*See* Def. Brief at 3, n.3); *See also Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 92 (7th Cir. 1985) (holding trial court did not abuse its discretion for refusing to reopen plaintiff's case-in-chief and admit new evidence when court explicitly rejected trial testimony and evidence presented at trial conflicted); *Blytheville Cotton Oil Co. v. Kurn*, 155 F.2d 467, 470-1 (6th Cir. 1960) (Court did not abuse discretion for denying motion to reopen that was "equivalent to motion for a new trial"); *Armstrong v. Charlotte County Bd. of County Com'rs*, 273 F.Supp.2d 1312, 1316 n.1 (M.D. Fla. 2003) (awarding damages for plaintiff's lost benefits supported only by plaintiff's testimony, but denying motion to reopen for presentation of evidence regarding value of other lost benefits not testified to at trial); *Korea First Bank v. Lee*, 14 F.Supp.2d 530, 531 (S.D.N.Y. 1998) (denying motion to reopen when counsel deliberately chose to leave witness off list of potential witness, reopening trial would place a great burden by requiring opposing witness to return to United States from Korea, and where desired testimony would not change outcome).

[7] Defendant cites *Downey* for the proposition that it is an abuse of a court's discretion to reopen and submit evidence if the failure to admit evidence is attributable to attorney negligence or carelessness. (Def. Brief at 3); *See also Downey v. Denton County, Texas*, 119 F.3d 381 (5th Cir. 1997) (holding trial court did not abuse its discretion by refusing to allow counsel to redesignate rebuttal witnesses as case-in-chief witnesses when counsel earlier explained tardy witness list submission as witness list for rebuttal witnesses) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). However, the case applies legal standards applicable to motions to reopen under Rule 60, and not other rules. *Lavespere*, 910 F.2d at 172-175.

Fifth Circuit held that a court should consider a motion to reopen under Rule 59 since the party had challenged the summary judgment "well before the 10 days from the entry of the judgment had passed." *Id*. at 175. However, neither Rule 59 nor 60 is entirely on point for Plaintiff's situation since a final judgment has not been entered by this Court. Under the Rules of the Court of Federal Claims, any order or decision of the Court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." RCFC 54(b); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994).

**2. Fundamental Fairness Dictates Reopening The Record.**

Considering the equities, this Court should reopen the record and admit the supplemental evidence. First, the motion to reopen and supplement the record was made in a timely fashion. Indeed, the motion was made before entry of final judgment. As stated previously, courts are generally more lenient to allow supplemental evidence when offered in a timely fashion in order for courts to make conclusions based on all of the available facts. Second, the admission of the new evidence will not prejudice Defendant. The government would not be prejudiced by the admission of the supplemental evidence as indicated by its own actions. The government received similar documents for all the properties at issue in *Franconia*, and never questioned any plaintiff's ability to prepay at trial. Nor did defendant ever question any plaintiff's ability to prepay in its post-trial briefs. There is no reason to expect that Defendant would have acted differently if the material had been presented at trial. This is especially true when the supplemental evidence is entirely consistent with the testimony and documents offered at trial. In fact, the supplemental evidence is even consistent with all of the other plaintiffs, which highlights the fundamental importance of the prepayment right. As a result, Defendant's own actions support reopening the record and admitting the evidence. Third, the documents were not

in possession of the Plaintiff or its agents during trial. In this matter, the bank erroneously denied having these documents prior to trial. (Maki Decl. ¶ 8) The bank's mistake was only uncovered by making another attempt subsequent to this Court's Order. (Maki Decl. ¶ 9) Plaintiff had no reason to doubt the bank's statements and therefore exercised reasonable due diligence. Further, the bank's conduct is excusable in its own right since the bank was in the middle of moving offices. (Maki Decl. ¶ 10) Finally, the supplemental evidence is material to the calculation of damages for Plaintiff. Omission of this evidence will lead to the unjust situation of identifying an injury, but denying any remedy.

**D. Plaintiff's Exercise of Reasonable Due Diligence Did Not Result In The Discovery Of The Supplemental Evidence That Was Held By The Bank At The Time Of Trial.**

In his declaration, Mr. Allan Maki provides great detail regarding the reasonable and diligent efforts made by the partners of Scenic Valley to obtain documents prior to trial. (Maki Decl. ¶ 4-10)[8] Defendant argues that Mr. Maki's declaration is incompetent evidence, and cites Federal Rules of Evidence 801 and 802. (Def. Brief at 4) The government focuses on statements where Mr. Maki speaks for the partnership and discussions with Mr. Linn Slattengren. *Id*. Due to Mr. Slattengren's unavailability, Mr. Maki obtained a power of attorney and is legally entitled to speak on behalf of Mr. Slattengren. (Maki Decl. ¶ 9) Mr. Slattengren, a retired judge, is on a different continent on behalf of the United Nations in an effort to restore and model a workable legal system for the war torn country of Kosovo. (Maki Decl. ¶ 7)

Additionally, Mr. Maki's declaration does not contain inadmissible hearsay, contrary to Defendant's assertions. First, the declaration of Mr. Maki is not submitted for admission to the record. Plaintiff provides his declaration to aid the Court in ruling on the admissibility of the

[8] It is worth noting that Mr. Maki, as an attorney licensed in the State of Michigan, is held to the same standards of professional conduct as any other officer of the court.

exhibits attached to the motion. Thus, labeling the declaration inadmissible is irrelevant. Indeed, Federal Rule 1101(d)(1) explicitly states that this Court is not bound by the rules of evidence regarding the determination of preliminary questions of fact, such as those relating to the qualification of a person who is a witness. Thus, the government's invocation of Rules 801 and 802 is irrelevant. Finally, even if the Federal Rules of Evidence did apply to this Court's admissibility determination, the declaration's attachments satisfy the prerequisites of the business record exception to the hearsay rule. Fed. R. Evid. 803(6). In short, Mr. Maki's declaration is relevant to the circumstances surrounding the document production and should be considered.

**E. The Supplemental Evidence Supports Plaintiff's Existing Evidence That It Could Prepay Its Mortgage.**

Plaintiff has located, and offered as supplemental evidence, certain financial documents including: an internal bank document documenting a meeting with Mr. Slattengren regarding financing the property, financial statements of the partners, and a financial statement for the partnership, Scenic Valley. (Maki Decl. Exhibits A-F) Contrary to Defendant's Brief, the internal bank note does, in fact, indicate that the Bank Of Osceola, now Riverbank, was willing to extend a loan to Scenic Valley. (Ex. A) ("I [the bank officer] would like to be compensated somehow for issuing the commitment i.e. some sort of commitment fee.").[9] The personal financial documents of the partners, exhibits B through E, indicate a collective net worth of over $3.5 million.[10]

---

[9] Contrary to the Defendant's Brief at p.7, n.4, the partnership's application to the agency for an equity loan was in fact predicated upon its ability to obtain a conventional loan to finance prepayment of the original agency loan.

[10] The net worth of Mr. Vitalis simply represents a portion of the financial resources available to the partnership as a whole when choosing among the options of securing financing for

The internal bank documents confirm the testimony of Mr. Vitalis that, without any aid from the partners' personal finances, the partnership could in fact prepay the FmHA mortgage and obtain a conventional loan from the value of the property itself. (IV/1011) The outstanding FmHA mortgage balance was about $355,000 in December 1994. (PX 48 at 9, n.1) Thus, the combination of the property's reserve account, $46,157, and the total value of the building and related land parcel, $327,264, totals $373,421 – more than enough to support a conventional mortgage capable of paying off the FmHA's outstanding mortgage. (Ex. F) The financial information of the partners simply adds to the available options the partnership could have taken to prepay the mortgage. When one looks at the entire financial situation of the partners and the partnership, Scenic Valley was able to obtain conventional financing in many different ways.[11]

## CONCLUSION

For the foregoing reasons, Plaintiff Scenic Valley respectfully requests that the Court grant it leave to supplement the record and admit the additional evidence cited herein, or in the alternative, that the Court hold that the evidence of record is sufficient to support Plaintiff's claim for damages.

Respectfully submitted,

Dated: December 6, 2004

**s/Jeff H. Eckland**

**Filed Electronically**

Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Telephone: (612) 305-4440

---

prepayment. Thus, Defendant's assertion that Mr. Vitalis' entire net worth is the only way to secure financing for two different properties is not well taken.

[11] Defendant fails to acknowledge that one need not liquidate property to obtain financing or that short-term encumbrances of property can be an economically wise decision.

Facsimile: (612) 305-4439